**No. 22-15710, 22-15732**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRUE HEALTH CHIROPRACTIC, INC.,
*Plaintiff/Appellee*
MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC.,
individually and as representative of a class of similarly situated persons,
*Plaintiff/Appellee/Cross-Appellant,*

v.

MCKESSON, MCKESSON TECHNOLOGIES, INC.,
*Defendants-Appellants/Cross-Appellees.*

*On Appeal from the United States District Court for the
Northern District of California (Oakland) No. 4:13-cv-02219-HSG
(Hon. Haywood S. Gilliam, Jr.)*

# PETITION FOR PANEL REHEARING OR REHEARING EN BANC
# FOR PLAINTIFFS/APPELLEES/CROSS-APPELLANT

Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone: (847) 368-1500
Facsimile:  (847) 368-1501
ghara@andersonwanca.com

Robert C. Schubert, Willem F. Jonckheer
Schubert Jonckheer & Kolbe LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA  94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@smk.law; wjonckheer@sjk.law

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ........................................................................i

Rule 35(b)(1) Statement...............................................................1

Background ...................................................................................2

Reasons Rehearing Should be Granted.........................................4

I.    The panel overlooked or misapprehended the fact that the
Bureau lacks delegated authority to issue a "final order,"
and the Amerifactors Ruling is not "made reviewable by"
47 U.S.C. § 402(a) ..............................................................4

II.    In the alternative, the Court should hold its Hobbs Act
precedents are distinguishable or do not apply where the FCC's
interpretation is contained in a "rule" rather than an "order.".................6

III.    In the second alternative, the full Court should overrule its Hobbs
Act precedents because they impose "[n]ot *Skidmore* deference or
*Chevron* deference, but *PDR* abdication," as reasoned in the
four-justice *PDR Network* concurrence.................................12

Conclusion ...................................................................16

i

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                     <u>Page(s)</u>

*Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*,
    80 F.4th 466 (4th Cir. 2023) ............................................................... 13

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ...................................................... 9–11, 14–15

*FCC v. ITT World Commcn's, Inc.*,
    466 U.S. 463 (1984) ..........................................................................8

*Gorss Motels, Inc. v. Safemark Sys., LP*,
    931 F.3d 1101 (11th Cir. 2019) ........................................... 2, 10, 12

*Holtzman v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ...............................................................3

*Int'l Telecard Ass'n v. FCC*,
    166 F.3d 387 (D.C. Cir. 1999) ...................................................... 5–6

*Lyngaas v. Curaden AG*,
    992 F.3d 412 (6th Cir. 2021) .......................................... 1, 13–14

*Mais v. Gulf Coast Collection Bureau, Inc.*,
    768 F.3d 1110 (11th Cir. 2014) ................................................ 9–10

*NTCH, Inc. v. FCC*,
    877 F.3d 408 (D.C. Cir. 2017) ...........................................................5

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
    139 S. Ct. 2051 (2019) ............................................ 1–2, 8, 12–15

*Robert W. Mauthe MD PC v. Millennium Health LLC*,
    58 F.4th 93 (3d Cir. 2023) .................................................. 2, 11–12

*Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*,
    788 F.3d 218 (6th Cir. 2015) ...................................................... 1, 13

## TABLE OF AUTHORITIES

**CASES**                                                            **Page(s)**

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ................................................................. 10–11

*Skidmore v. Swift Co.*,
   323 U.S. 134 (1944) ............................................................................. 12–15

*Sierra Club v. United States Nuclear Regulatory Comm'n*,
   862 F.2d 222 (9th Cir. 1988) ....................................................................... 8

*True Health Chiropractic, Inc. v. McKesson Corp.*,
   896 F.3d 923 (9th Cir. 2018) ....................................................................... 3

*Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017) ................................................................ 9–11

*Wilson v. A.H. Belo Corp.*,
   87 F.3d 393 (9th Cir. 1996) ...................................................................... 6, 9

*U.S. West Commc'ns, Inc. v. Hamilton*,
   224 F.3d 1049 (9th Cir. 2000) ...................................................... 6–8, 11, 14

**STATUTES**

28 U.S.C. § 2342(1) .................................................................... 3–5, 11
47 U.S.C. § 2344 ............................................................................ 11
47 U.S.C. § 155 ................................................................................ 4
47 U.S.C. § 227(a)(3) ...................................................................... 3, 13
47 U.S.C. § 227(b)(1)(C) .................................................................. 2
47 U.S.C. § 402(a) ........................................................................ 2, 4–6

**RULES & REGULATIONS**                                **Page(s)**

47 C.F.R. § 0.361 ............................................................................. 4
Fed. R. App. P. 35(b)(1)(B) .............................................................. 12–13
*In re Amerifactors Fin. Group, LLC Pet.*, 2019 WL 6712128
 (CGAB Dec. 9, 2019) ............................................................... *passim*

## Rule 35(b)(1) Statement

This appeal involves a question of exceptional importance on which the Supreme Court granted certiorari, but declined to answer, in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2053 (2019): "[w]hether the Hobbs Act required the district court in this case to accept the FCC's legal interpretation of the Telephone Consumer Protection Act."

The panel here answered that question in the affirmative, holding the district court was "bound" to follow a declaratory ruling issued by an FCC bureau interpreting the statutory term "telephone facsimile machine" in the TCPA to exclude users of "online fax services" from the statute's protections, regardless of whether that interpretation is correct. (Mem. at 7). That ruling conflicts with the Sixth Circuit, which holds that if a TCPA definition is "unambiguous" the courts "do not defer to the agency's interpretation." *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 223 (6th Cir. 2015). It also conflicts with the Sixth Circuit's ruling that the definition of "telephone facsimile machine" unambiguously covers users of "online fax services." *Lyngaas v. Curaden AG*, 992 F.3d 412, 425–27 (6th Cir. 2021).

The panel's ruling is also contrary to the view of at least four Justices in *PDR Network* that the "extraordinary" proposition that a federal court is powerless to disagree with the FCC's interpretation of the TCPA "abdicat[es]" the federal

judiciary's constitutional role to say what the law is. 139 S. Ct. at 2066 (Kavanaugh, J., concurring, joined by Thomas, Alito, Gorsuch, JJ.); *see also Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019) (three-judge concurrence urging Eleventh Circuit to overrule its precedents requiring district courts to follow FCC's interpretation of the TCPA).

If necessary, the full Court can and should grant rehearing on this question en banc in order to overrule its precedents to the extent they require a district court to follow the FCC's interpretation of the TCPA, as argued in Section III, below. However, as explained in Sections I and II, below, the Court need not reach the thorny question presented in *PDR Network* to vacate the panel decision. It could simply rule (1) that the ruling at issue is not a "final order of the Commission made reviewable by section 402(a)" under the Hobbs Act; *or* (2) that this Court's prior Hobbs Act precedents, which were not TCPA actions, are distinguishable; *or* (3) that the ruling is merely a "rule" and not an "order," a distinction persuasively argued in *Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93, 99–101 (3d Cir. 2023) (Phipps, J., concurring).

## Background

This is a TCPA class action arising out of a series of fax advertisements sent by McKesson in 2009-2010. Plaintiffs alleged the faxes were "unsolicited advertisements" under the TCPA, 47 U.S.C. § 227(b)(1)(C), and sought class

certification, which is "normal" in TCPA junk-fax cases. *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

The district court initially denied class certification on the basis that individualized questions predominated regarding McKesson's defense that it obtained recipients' "prior express invitation or permission" to send fax ads, but this Court vacated that ruling. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 930 (9th Cir. 2018). On remand, the district court ruled that McKesson failed to prove its consent defense, but it ultimately held a class could not remain certified because it was "bound" to follow a "Declaratory Ruling" issued by the Consumer & Governmental Affairs Bureau of the FCC in *In re Amerifactors Fin. Group, LLC Pet.*, 2019 WL 6712128 (CGAB Dec. 9, 2019) ("Amerifactors Ruling"), stating that a fax is not "sent to" a "telephone facsimile machine" as defined by 47 U.S.C. § 227(a)(3), if the end-user views the fax using an "online fax service," and concluding there was no manageable way to separate users of online fax services from users of traditional "stand-alone" fax machines.

On the parties' cross-appeals, the panel affirmed the district court in all respects. (Mem. at 1–9). With respect to class certification, the panel's Memorandum decision agreed that the Hobbs Act, 28 U.S.C. § 2342(1), required the district court to follow the Amerifactors Ruling, regardless of whether the

3

Bureau's interpretation of the statute is correct. (*Id.* at 7). As argued below, the panel's ruling should not be permitted to stand.

## Reasons Rehearing Should be Granted

**I.** **The panel overlooked or misapprehended the fact that the Bureau lacks delegated authority to issue a "final order," and the Amerifactors Ruling is not "made reviewable by" 47 U.S.C. § 402(a).**

The panel Memorandum is based on the conclusions (1) that the Bureau had "delegated authority" to issue a "final order[] of the Federal Communications Commission" within the meaning of the Hobbs Act, 28 U.S.C. § 2342(1); and (2) that the Amerifactors Ruling is "made reviewable by" 47 U.S.C. § 402(a), thus making it covered by § 2342(1). (Mem. at 5–7). Both conclusions are erroneous, and the panel or the full Court should correct that erroneous reasoning.

1. The FCC expressly *withheld* from the Consumer & Governmental Affairs Bureau the authority to issue a "final order." The FCC regulations delegate to the Chief of the Consumer & Governmental Affairs Bureau all the functions of the Bureau "*provided that* the following matters shall be referred to the Commission en banc for disposition: (a) Notices of proposed rulemaking and of inquiry *and final orders in such proceedings*. . . ." 47 C.F.R. § 0.361. The statute that gives the FCC the authority to delegate its functions, 47 U.S.C. § 155, and the FCC regulations actually delegating those functions draw a clear distinction between the FCC's bureaus and the full Commission itself, and the FCC has not

delegated (and cannot delegate) to a bureau the authority to issue final orders. *See NTCH, Inc. v. Fed. Commc'ns Comm'n*, 877 F.3d 408, 413 (D.C. Cir. 2017) ("The [Enforcement] Bureau's order was not a Commission order and, therefore, it was not an order subject to judicial review.").

2.    The Amerifactors Ruling is also not "made reviewable by" 47 U.S.C. § 402(a), meaning that it is not covered by the Hobbs Act, 28 U.S.C. § 2342(1). The D.C. Circuit, the default circuit for an appeal of an FCC order interpreting the TCPA, holds unequivocally: "Lest there be any misunderstanding, we expressly hold that a petition for review filed after a bureau decision but before resolution by the full Commission is subject to dismissal as incurably premature." *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999). In other words, where an application for review of a bureau ruling is pending, until the full Commission issues a "final order" on that application, "[o]ngoing agency review renders an order nonfinal for purposes of judicial review." *Id.*

Here, there is a pending application for review of the Amerifactors Ruling with the full Commission. (*See* 1-SER-121 (*In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Application for Review (filed Jan. 8, 2020)). If the party that filed that application for review were to file a Hobbs Act petition for judicial review of the Amerifactors Ruling, it would be dismissed "as incurably premature." *Int'l Telecard*, 166 F.3d at

388. Because the Amerifactors Ruling is not "made reviewable by" *any statute*, the court of appeals does not have "exclusive jurisdiction" to "determine the validity of" the Amerifactors Ruling under the Hobbs Act. Thus, contrary to the panel's reasoning (Mem. at 7), the ruling cannot be "binding" under the rationale of the cases cited by the panel in *U.S. West Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000), *as amended on reh'g* (Sept. 13, 2000), and *Wilson v. A.H. Belo Corp*., 87 F.3d 393, 400 (9th Cir. 1996). (Mem. at 6–7).

Because the panel Memorandum is based on the erroneous conclusions that the Bureau has delegated authority to issue a Hobbs Act "final order" and that the Amerifactors Ruling is "made reviewable by" Section 402(a), it should be vacated.

## II. In the alternative, the Court should hold its Hobbs Act precedents are distinguishable or do not apply where the FCC's interpretation is contained in a "rule" rather than an "order."

The panel relied on two circuit precedents, neither of which was a TCPA case, for the conclusion that the district court was required by the Hobbs Act to follow the Amerifactors Ruling's interpretation of the TCPA: *Hamilton*, 224 F.3d at 1054, and *Wilson*, 87 F.3d at 400. (Mem. at 6–7). Even if the panel was correct that the Amerifactors Ruling is a "final order," it should hold that *Hamilton* and *Wilson* are distinguishable and do not apply in a private TCPA action *or* that the Amerifactors Ruling is merely a "rule," and not an "order" at all.

1.　　In *Hamilton*, 224 F.3d at 1052, U.S. West, an "incumbent local exchange carrier" ("ILEC"), brought an action in district court seeking to invalidate certain provisions of an arbitrated interconnection agreement with several "competitive local exchange carriers" ("CLECs"), including a provision "that precludes U.S. West from obtaining access to the CLECs' poles, ducts, conduits, and rights-of-way, even though U.S. West must grant these same CLECs access to its own poles, ducts, conduits, and rights-of-way." That contractual provision was required by an FCC interpretation of the Telecommunications Act of 1996 in the "First Local Competition Order." *Id.* at 1053.

U.S. West argued that the FCC's interpretation was contrary to the statute, but this Court noted that U.S. West "did not file a Hobbs Act petition" challenging the First Local Competition Order, while "[s]everal parties in other cases did petition for review of the FCC's First Local Competition Order in other courts of appeals." *Id.* at 1054. This Court held that those petitions were consolidated and were currently pending before the Eighth Circuit, making the Eighth Circuit "the sole forum for addressing challenges to the validity of" the Local Competition Order, and so U.S. West's challenge was barred by the Hobbs Act. *Id.* U.S. West argued that "the Hobbs Act does not apply to" the FCC order at issue "because it is an 'interpretive' rather than a 'legislative' rule." *Id.* at 1055. While "doubt[ing] the soundness of" the FCC ruling at issue, the Court rejected the "interpretive"

argument, holding that the Hobbs Act "contains no exception for 'interpretive' rules," and that "'final orders' include both interpretive and legislative orders," provided that they "impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process," as the First Local Competition Order did by denying ILECs access to CLECs' poles, ducts, conduits, and rights-of-way. *Id.* (quoting *Sierra Club v. United States Nuclear Regulatory Comm'n*, 862 F.2d 222, 225 (9th Cir. 1988)).

*Hamilton* does not stand for the proposition that a district court is required to apply the FCC's interpretation of the TCPA. *Hamilton* was decided long before the Supreme Court's decision in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019), and it was not a private TCPA action, so it could not decide the question in *PDR Network*—"[w]hether the Hobbs Act required the district court . . . to accept the FCC's legal interpretation of the [TCPA]." *Id.* at 2055.

In addition, there was a concurrent Hobbs Act proceeding challenging the First Local Competition Order, and U.S. West chose not to participate in that appeal and challenged the order in the district court instead, meaning it was attempting to "evade" the Hobbs Act, like the petitioner in *FCC v. ITT World Commcn's, Inc.*, 466 U.S. 463, 468 (1984), where the petitioner *simultaneously*

8

sought relief under the Hobbs Act and in the district court, and the Supreme Court held that "[l]itigants may not evade" the Hobbs Act through such maneuvers.

The same thing happened in *Wilson*, 87 F.3d at 400, where "numerous politicians in Georgia and Alabama" filed Hobbs Act petitions challenging an FCC ruling stating that the FCC had exclusive authority to decide claims that television stations overcharged political candidates for campaign advertisements. This Court held that another group of candidates, who elected not to file Hobbs Act petitions, could not challenge the ruling in the district court. *Id.*

In this case, in contrast, there is no Hobbs Act appeal that Plaintiffs in this case could use to challenge the Amerifactors Ruling. Nor is there any such Hobbs Act appeal that Plaintiffs are attempting to "evade."

In the TCPA context, this Court has reviewed final orders of the FCC interpreting the TCPA for *Chevron* deference, which is incompatible with the notion that a court is "required" to follow the interpretation. In *Van Patten v. Vertical Fitness Grp., LLC*, which was a private TCPA action, this Court stated "[w]e do not question, in this appeal from an order of the district court, the validity of the FCC's interpretation of 'prior express consent.'" 847 F.3d 1037, 1044 (9th Cir. 2017) (citing *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110,

9

1119–21 (11th Cir. 2014)).[1] But in a later section of the opinion deciding whether "prior express consent" is revocable, the Court referred to a "final order" of the FCC, which concluded that prior express consent is revocable, as "persuasive guidance" and reviewed it under the two-step analysis in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984). *Van Patten*, 847 F.3d at 1048. The Court held that the statute was silent regarding revocation of prior express consent at *Chevron* "step one," and concluded at "step two" that "it [was] reasonable for the FCC to interpret the TCPA to permit revocation of consent." *Id.* (citing *Chevron*, 467 U.S. at 843–44).

In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009), this Court reviewed a portion of a 2003 "final order" ruling that text messages are "calls" under the TCPA for *Chevron* deference. The Court concluded that "we find that the FCC's interpretation of the TCPA is reasonable, and therefore afford it deference to hold that a text message is a 'call' within the TCPA." *Id.* at 954.

If the Hobbs Act *required* federal courts to apply the FCC's interpretations in private TCPA litigation regardless of whether they are reasonable, this Court

---

[1] As discussed below, the Eleventh Circuit in *Mais* took a hardline position that the Hobbs Act requires a district court to apply the FCC's interpretations of the TCPA, even if they are wrong. *Mais*, 768 F.3d at 1121; *but see Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019) (Pryor, J., concurring) (calling for the en banc court to overrule *Mais* at the earliest opportunity and adopt Justice Kavanaugh's concurrence in *PDR Network*).

could not have made its *Chevron* determinations in *Van Patten* and *Satterfield*, since neither action was a Hobbs Act appeal from a "final order" of the FCC naming the United States as the respondent. *See* 47 U.S.C. § 2342(1); 47 U.S.C. § 2344. Thus, the Court should rule that a private TCPA action is distinguishable from the contexts in *Hamilton* and *Wilson* and rule that a district court hearing such an action should interpret the statute, with appropriate deference to any applicable FCC ruling.

2.    Alternatively, the Court could also follow the concurring opinion recently issued by Judge Phipps of the Third Circuit in *Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93, 99–101 (3d Cir. 2023) (Phipps, J., concurring). Although not binding, Judge Phipps's concurrence persuasively argues that the interpretation of the FCC at issue in *Mauthe*—which concerned the statutory term "unsolicited advertisement"—is a "rule" and not an "order," and thus not subject to the Hobbs Act, 28 U.S.C. § 2342(1), which vests exclusive jurisdiction to determine the validity of a "final order" of the FCC in the court of appeals on a petition challenging agency action. *Mauthe*, 58 F.4th at 100 (Phipps, J., concurring).

Applying the reasoning of Judge Phipps's concurrence in this case, the Amerifactors Ruling's interpretation of the statutory term "telephone facsimile machine" is not an "order" under the Hobbs Act. Under Judge Phipps's reasoning,

11

even if the bureau's interpretation of "telephone facsimile machine" had been issued by the full Commission, rather than an inferior bureau, and even if it were "final," rather than being the subject of a pending appeal to the full Commission, it would still not be subject to the "exclusive jurisdiction" of the Hobbs Act. *Id.*

**III.**    **In the second alternative, the full Court should overrule its Hobbs Act precedents because they impose "[n]ot *Skidmore* deference or *Chevron* deference, but *PDR* abdication," as reasoned in the four-justice *PDR Network* concurrence.**

Finally, if the Court continues to hold that the Amerifactors Ruling is "binding" under *Hamilton* and *Wilson*, the full Court should take up the question on which the Supreme Court granted certiorari, but declined to answer, in *PDR Network*, 139 S. Ct. at 2053: "[w]hether the Hobbs Act required the district court in this case to accept the FCC's legal interpretation of the Telephone Consumer Protection Act." *See Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1106 (11th Cir. 2019) (Pryor, J., concurring, joined by Newsom and Branch, JJ.) (recognizing that Eleventh Circuit precedent holds that the Hobbs Act requires a district court to follow the FCC's interpretations of the TCPA and urging the full court to overrule those authorities en banc "[i]n the earliest appropriate case").

1.    First, the rule that the Hobbs Act requires a district court to follow the FCC's interpretations of the TCPA conflicts with the law of other circuits. *See* Fed. R. App. P. 35(b)(1)(B) ("When the opinion of a panel directly conflicts with an existing opinion by another court of appeals and substantially affects a rule of

national application in which there is an overriding need for national uniformity, the existence of such conflict is an appropriate ground for petitioning for rehearing en banc.").

The Sixth Circuit observed there is a "circuit split" on whether the courts must defer to the FCC's interpretation in *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 223 (6th Cir. 2015). The Sixth Circuit held the TCPA definition of "advertisement" at issue in that case was "unambiguous" and so "we do not defer to the agency's interpretation." *Id.*

And, following the remand from the Supreme Court in *PDR Network*, the Fourth Circuit decided it would no longer hold district courts are required by the Hobbs Act to follow the FCC's "interpretive rules," and will instead defer to them to the extent they have the "power to persuade," applying *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944). *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 80 F.4th 466, 471 (4th Cir. 2023).

Thus, if this case had been filed in the Sixth Circuit or Fourth Circuit, Plaintiffs in this case could have simply argued that the statutory definition of "telephone facsimile machine" in 47 U.S.C. § 227(a)(3) is unambiguously not limited to users of "stand-alone" fax machines and does not exclude users of "online fax services," as the Sixth Circuit held in *Lyngaas v. Curaden AG*, 992 F.3d 412, 425–27 (6th Cir. 2021). The panel in this case did not even cite *Lyngaas*,

though Plaintiffs relied on it heavily in their briefs (*see* Pls.' Opening-Response Br. at 35–37; Pls.' Reply Br. at 10–12), due to the panel's conclusion that it was required to follow the Amerifactors Ruling, regardless of whether it correctly interprets the statute.

And, in the Fourth or Sixth Circuits, even if the district court concluded that the definition of "telephone facsimile machine" is ambiguous, Plaintiffs could have argued that the Amerifactors Ruling is not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (the standard for legislative rules) or *Skidmore* (the proper standard for interpretive rules). In either case, the district court would not have been "required" to blindly follow the ruling. This Court should overrule *Hamilton* and *Wilson* to the extent necessary to allow district courts in this Circuit the same autonomy.

2.    Second, the proposition that the Hobbs Act requires a district court to follow the FCC's interpretation of the TCPA is egregiously wrong for the reasons explained by four Justices in their concurring opinion in *PDR Network*, 139 S. Ct. at 2057–67. As the concurrence explains, a district court "does not 'determine the validity' of an order when the district court agrees or disagrees with the agency interpretation in an enforcement action." *Id.* at 2063. If the district court in a TCPA enforcement action "disagrees with the agency interpretation, the district court does not issue a declaratory judgment or an injunction against the agency." *Id.*

14

Rather, the district court simply determines whether the defendant is liable "under the correct interpretation of the statute," using "the usual principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* at 2064.

Moreover, the concurring Justices reasoned, under the misinterpretation of the Hobbs Act applied by the panel here, once the 60-day period for filing a Hobbs Act appeal from agency action has expired, "*no one* is able to argue in court that the regulation is inconsistent with the statute—no matter how wrong the agency's interpretation might be." *Id.* at 2066. The effect of this "extraordinary close-the-courthouse-door outcome" is "to transform the regulation into the equivalent of a statute," requiring a district court "to afford the agency not mere *Skidmore* deference or *Chevron* deference, but absolute deference. Not *Skidmore* deference or *Chevron* deference, but *PDR* abdication." *Id.*; *see also* 139 S. Ct. at 2056 (Thomas, J., concurring in the judgment) (arguing the rule that the Hobbs Act requires the courts to follow the FCC's interpretation "rests on a mistaken—and possibly unconstitutional—understanding of the relationship between federal statutes and the agency orders interpreting them").

**<u>Conclusion</u>**

For the foregoing reasons, the panel or the full Court acting en banc should

grant rehearing and vacate the panel Memorandum.

<u>/s/ Glenn L. Hara</u>
Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road, Ste 500
Rolling Meadows, IL  60008
Telephone:(847) 368-1500

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)**   | 22-15710, 22-15732 |

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

Prepared in a format, typeface, and type style that complies with Fed. R. App.

⬤  P. 32(a)(4)-(6) and **contains the following number of words**:   | 3,696 |   .

*(Petitions and responses must not exceed 4,200 words)*

## OR

◯  In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature**   | s/Glenn L. Hara |   **Date**   | 11/22/2023 |

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11**                                                                                 *Rev. 12/01/2021*